W. C. TIMS, Appellant,

v.

The **BOARD OF EDUCATION OF Mc-NEIL, ARKANSAS,** David Scott, Superintendent of Schools of the McNeil School District, Appellees,

and

Arkansas Education Association, Intervenor.

No. 20508.

United States Court of Appeals, Eighth Circuit.

Dec. 17, 1971.

Walker, Kaplan, Lavey & Mays, John T. Lavey, Little Rock, Ark., for appellant.

Woodward & Kinard, Mike Kinard, Magnolia, Ark., for appellees.

Before JOHNSEN and ROSS, Circuit Judges, and HARPER, District Judge.

HARPER, District Judge.

This equitable action was brought pursuant to 42 U.S.C. §§ 1981, 1983 and 28 U.S.C. § 1343(3) (4), by W. C. Tims and the Arkansas Teachers Association, now merged into the Arkansas Educational Association, the surviving organization, which was allowed to intervene in the case, claiming discrimination based on race by the Board of Education of McNeil School District (hereinafter referred to as the School District) in the School Board's termination of Tims' employment at the close of the 1968–69 school term, and its refusal to rehire him as a principal or hire him as superintendent for the 1969–70 school year.

The appellant Tims sought relief in the form of a declaratory judgment under the provision of 28 U.S.C. § 2201 for a mandatory injunction to require the School Board to reinstate him, and for money damages.

At the close of the appellant's case the respondent School Board moved the court to dismiss the action on the ground that the appellant's proof failed to substantiate his allegation of racial discrimination, showing only an internal

dispute between the superintendent and the principal. The court ordered the case dismissed. W. C. Tims, the appellant, has appealed the court's dismissal of this action.

The School Board's decision not to renew the appellant's teaching contract was based upon a letter dated April 25, 1969, by David Scott, the Superintendent of the School District, a copy of which was sent to the appellant. The superintendent's recommendation that the appellant's teaching contract not be renewed was based generally upon the appellant's degree of competency to fulfill the duties of the position he held, his insubordination, his violations of the professional duties as established for the position of principal, and his general and continuous harassment of the superintendent throughout the school year. The superintendent's letter set out twenty-two specific instances regarding the above charges.

The appellant concedes in his brief that "a school district has the right to discharge an employee for good reason, bad reason, or no reason, absent discrimination" (Appellant's Brief, pp. 14–15), which position is in accord with controlling decisions. See Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153 (8th Cir. 1969). Such a decision by the School Board, however, must not rest on grounds that are violative of constitutional or legal rights and, therefore, the real issue in this case is whether the School Board terminated the appellant for racial reasons.

"Teachers in the Arkansas schools are not covered by any type of civil service or tenure law. By Ark.Stat.Ann. § 80–1304(b), they shall be employed by written contract annually." *Freeman,* supra at 1158. Although under Arkansas law teachers are not entitled as a matter of right to a hearing with respect to dismissal (*Freeman,* supra at 1160), the School Board went to great lengths to protect the constitutional rights of the appellant in this instance. The appellant was given formal notice, a public hearing, with the right of confrontation of witnesses and cross-examination. At the hearing, all Arkansas laws were followed concerning procedure, a reporter was provided, and a copy of the transcript was later furnished to appellant. The superintendent's letter recommending that the appellant's teaching contract not be renewed was not only sent to the appellant and to the School Board, but also to the Arkansas Education Association and its attorneys. When the hearing was held the Arkansas Education Association sent its attorney, Mr. Eugene Warren, to the public hearing at which the charges and allegations against the appellant were aired. Also attending was a Mr. Patterson of the Arkansas Teachers' Association.

The transcript of the hearing is a part of the record in this case and Mr. Warren's remarks at the close of the hearing are of interest. We quote (Appendix, p. 110):

"I want to say that in twenty years of representing the A.E.A. and quite a number of the teachers of Arkansas, I have been to a number of these hearings, and I want to compliment you on your giving everybody an opportunity to make a statement, and in full and in a fair hearing. I just wish all over the State of Arkansas, teachers could get this kind of hearing when their jobs are at stake. I think it's very commendable of you."

The testimony disclosed that the appellant had taught in this school district for some seventeen years, was well-educated, had attained the position of principal, was an ordained minister and an active pastor. After the appellant had been teaching in the district some twelve to fifteen years problems began developing between the appellant and the superintendent of schools. At the end of the 1966–67 school year, the Board had not intended to rehire appellant, but did so, due to its failure to comply with the law. At the end of the 1967–68 school year, appellant was given the proper notice by the Board that he would not be rehired, but shortly thereafter Scott, the

new superintendent of schools, prevailed upon the Board to rehire appellant for the school year 1968–69. Shortly after he was rehired a dispute between the appellant and the superintendent occurred.

Scott, the superintendent, after encountering in the summer of 1968 a number of disputes and disagreements with the appellant with respect to school matters, in an effort to forestall further problems, in cooperation with the School Board prepared a document entitled "Professional Duties of the Principal". After the document was prepared the appellant was at a board meeting and the Board and Scott went over these suggested professional duties with the appellant, and then gave him an opportunity to make suggestions with respect to the list of duties. After appellant examined the list of duties he sent a letter suggesting certain revisions. Thereafter, the document was retyped into a final draft styled "Professional Duties of the Principal". A special meeting of the Board was held on August 29, 1968, in executive session with the appellant and Scott present, at which the Board asked the appellant if he thought he could live with the list of professional duties set forth. He stated that he could. The document was then adopted by the Board at this meeting (Plaintiff's Exhibit 2). The allegations that Scott made to the Board by letter (Exhibit 1, Appendix, pp. 8–12) with respect to the appellant's activities during the past school year were for the most part in direct conflict with the professional duties of the principal as listed in Exhibit 2.

At the trial itself, the appellant testified that the difficulties (conflict of issues) that he had with the superintendent at the beginning of school continued throughout the school year, and that from time to time he refused directions and suggestions from the superintendent and in some instances even defied him. In addition to the witnesses who testified at the hearing and who again testified at length at the trial, a number of other witnesses were called, including the secretary of the School Board, and as the lower court held, the testimony conclusively showed that the sole basis for the failure to rehire the appellant was the proven charges made against him by Scott, the superintendent of schools.

The record with respect to the firing and hiring of teachers in the School District disclosed the following: There had been no decrease in the number of black teachers hired over the past several years except for the school year 1969–70, when appellant had not been rehired, and the number of black teachers dropped to eleven, compared with ten white teachers; the number of white teachers had actually declined during the same period; no black teacher had been discharged except for lack of educational qualifications, and their positions were filled by other black teachers; and the number of black teachers who had been hired each year comprised approximately fifty percent of the teachers. Under such circumstances the burden of proving discrimination rested with the appellant. Moore v. Board of Education of Chidester School Dist. No. 59, 448 F.2d 709 (8th Cir. 1971).

Appellant failed to meet this burden of proof. No racial discrimination was shown with respect to him. We agree with the district judge that the appellant was not rehired as a result of an internal dispute between the superintendent and the principal over operation of the school.

Judgment affirmed.