Earl G. BOSTIC, Sr., Plaintiff,

v.

John K. WALL, Sheriff of Mecklenburg County, and The Board of Commissioners of Mecklenburg County, Defendants.

No. C–C–82–667–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 7, 1984.

John T. Nockleby, Chambers, Ferguson, Watt, Wallace & Adkins, P.A., Charlotte, N.C., for plaintiff.

James O. Cobb, Ruff, Bond, Cobb, Wade & McNair, P.A., Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a Complaint filed by the Plaintiff Earl Bostic against John Kelly Wall, Sheriff of Mecklenburg County and the Board of Commissioners of Mecklenburg County contending he had been discriminated against *because* of his race when he was terminated from his position of deputy sheriff, and denied transfer to a position as security officer in the Jail in Mecklenburg County. When the case was called for trial, the Plaintiff's attorney announced in open court that he was proceeding solely on the issue of denial of transfer to the position of security officer.

The Defendants moved at the close of the Plaintiff's evidence and again at the close of all the evidence for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure as to the Sheriff and the Board of County Commissioners. The motion as to the County Commissioners was on the grounds that the Board of Commissioners was not the "employer" of the employees within the Sheriff's office within the meaning of either Title VII or 42 U.S.C. § 1981.

After the trial of this action, the Defendants filed a "suggestion" that the Court lacks subject matter jurisdiction over the Plaintiff's Title VII claim because the Defendants are not properly named in the EEOC charge which is a jurisdictional prerequisite to suit under Title VII.

### SUBJECT MATTER JURISDICTION

The Plaintiff named "Mecklenburg County—Sheriff Department" as the employers who discriminated against him. The Plaintiff further, in the particulars of the charge, repeatedly referred to Sheriff Wall's participation in the Plaintiff's alleged discriminatory discharge. The parties named in the litigation, however, are Sheriff Wall and the Board of Commissioners of Mecklenburg County ("the Board"). The Defendants suggest that this technical deficiency in the naming of the parties deprives the Court of subject matter jurisdiction over both Defendants.

The Defendants are correct in asserting that in order to satisfy the jurisdictional prerequisite of Title VII the charged party must be named in the charge. *Mickel v. South Carolina State Employment Service*, 377 F.2d 239 (4th Cir.1967). This requirement serves to notify the charged party of the asserted violation and brings the charged party before the EEOC to at-

tempt securing the voluntary compliance with the law. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.1969).

The charge, however, is to be "construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Kaplan v. Int'l Alliance of Theatrical & Stage Employees & Motion Picture Machine Operators*, 525 F.2d 1354, 1359 (9th Cir.1975). The Courts have, therefore, recognized exceptions to the general rule that a defendant must be named in the charge before he can be sued. *Brewster v. Shockley*, 554 F.Supp. 365, 368 (W.D.Va.1983). One recognized exception existing is if the relationship between the named party and the unnamed defendant is that of principal and agent or substantially identical parties. 377 F.2d at 241; 554 F.Supp. at 368. A second exception is recognized if the EEOC could infer from the facts in the charge that the unnamed defendant violated Title VII. *Id.* at 369. In addition, the courts are reluctant to dismiss the unnamed party if he had notice of the EEOC conciliatory efforts and participated in EEOC proceedings. *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1156 (5th Cir.1979).

In the instant case Sheriff Wall was clearly named in the charge as a discriminatory party. The Plaintiff's only deficiency is his failure to place Sheriff Wall's name on a particular line of the EEOC form. The Plaintiff did, however, place the name "Sheriff's Department" on the correct line. Further, it is significant that Sheriff Wall did participate in the EEOC investigation and there is a complete absence of evidence that Sheriff Wall was in someway prejudiced because his name was not placed on a certain line in the charge. Thus, it is the opinion of the Court that Sheriff Wall is "named" in the EEOC charge and accordingly subject matter jurisdiction over the Title VII claim is not lacking.

The Court is further of the opinion that the Board has been "named" in the EEOC charge. The charge clearly names "Mecklenburg County" as a charged party. The County was on notice of the Plaintiff's charge and participated in the EEOC conciliatory efforts. The Board is the governing body through which the County functions. The Board possesses the final authority for the decisions of the County. *See, e.g.*, N.C. G.S. §§ 153A–13; 153A–34; 153A–47; 153A–49; 153A–92; 153A–93; 153A–97; 153A–101; 153A–103; and 153A–123. Thus, the Board in essence is substantially identical to the County or is properly considered the agent of the County. Further, the Plaintiff apparently filed his charge without the assistance of counsel. To hold the Plaintiff to the level of technical exactness suggested by the Defendants would exalt form over substance and defeat the legislative purposes of Title VII. For the aforementioned reasons and in light of the judicially created exceptions to the requirement that a party must be named in the charge, the Court is of the opinion that subject matter jurisdiction over the Board exists in this litigation.

## FINDINGS OF FACT

The Plaintiff is a black citizen of the United States who resided in Mecklenburg County, North Carolina during all times relevant to this litigation.

The Defendant, John Kelly Wall, during all times relevant to this suit was the elected Sheriff of Mecklenburg County, North Carolina. Sheriff Wall was elected in November of 1978, took office in December of that year and served until he was defeated in November of 1982.

The Defendant Board is the governing body of Mecklenburg County, and as such, is the "agent" of Mecklenburg County within the meaning of Title VII, 42 U.S.C. § 2000e(a), (b).

The Plaintiff was hired "off the street" as a jail security officer on May 3, 1979 and was promoted to deputy sheriff on July 11, 1979 at the request of Defendant Wall. (Defendants' Exhibit 1 and 2).

In 1972 or 1973 North Carolina instituted a requirement that persons who function as law enforcement officers in North Carolina must take a minimum standards course and

must pass a State certification examination in order to perform their duties. A deputy sheriff, as a law enforcement officer, is therefore subject to this requirement.

The Plaintiff received a "grandfather" certification as a law enforcement officer when the requirement went into effect because he was at that time a deputy sheriff in Richmond County, North Carolina. He lost his "grandfather" certification, however, because he was out of law enforcement for more than a year before he was appointed as deputy sheriff by Sheriff Wall.

The training course for certification was given at the Charlotte Police Training Academy two or three times a year.

The Plaintiff was given a probationary certification on October 31, 1979 which expired on February 4, 1980 on the premise that he would attend the required class and pass the State examination.

For bureaucratic reasons, the Plaintiff was not able to take the course in the Fall of 1979 or to take the State examination.

On December 20, 1979 Sheriff Wall was advised by the North Carolina Criminal Justice Training and Standards Council that when the Plaintiff's certification expired on February 5, 1980 the Council would have to suspend the probationary certification because the Plaintiff had not satisfactorily completed the Council's accredited basic training course. (Defendants' Exhibit 4).

The Plaintiff did not take the course before his probationary certificate expired. On June 27, 1980 Sheriff Wall and the Plaintiff were notified in writing by the North Carolina Criminal Justice Standards Division that the Plaintiff's probationary certification had expired on February 5, 1980 and thus the Plaintiff was no longer qualified to exercise the powers and duties of a sworn law enforcement officer. (Defendants' Exhibits 6 and 7). Even in light of the Plaintiff's failure to take the course and pass the examination, Sheriff Wall advised the Plaintiff that the department would keep him on the payroll as a deputy

sheriff. Sheriff Wall, however, further advised the Plaintiff not to perform any of the duties of a law enforcement officer, admonished him to enroll in the next course and stated that he would have to pass the course and the State examination in order to retain his deputy sheriff position.

The Plaintiff did enroll in the next course offered at the Charlotte Police Academy from September 15, 1980 to December 16, 1980. There were three written tests given to all the participants in the course. (There was one additional test given on firearms on which the Plaintiff scored a 75).

The Plaintiff made a 52.2, 59, and 50 respectively out of a possible 100 on the three tests. (Defendants' Exhibits 8 and 8a). The Plaintiff's grades were the lowest grades in the entire class made on each test.

To pass the course a student needed a 70 average. The Plaintiff failed the course with a 57.4 average.

Although the Plaintiff testified he worked diligently in the class, the course instructor testified that the Plaintiff failed to apply himself to the work. As an example, the instructor testified that the Plaintiff did not attend the sessions on first aid. First aid is a mandatory section of the course. The instructor told the Plaintiff that since he failed to attend this mandatory section, the Plaintiff would have to make up his certification by attending a Red Cross course. The Plaintiff, however, never made an attempt to attend a Red Cross course on first aid.

During the course, the Plaintiff's instructor, as well as other students, informed Sheriff Wall and/or his immediate supervisors about the Plaintiff's poor performance in the course. When Sheriff Wall learned of the Plaintiff's low grades, he asked his supervising deputy, Mr. Long, to help the Plaintiff with the course. Mr. Long approached the Plaintiff several times to offer him assistance. The Plaintiff, however, assured Mr. Long that he was doing well, that he did not need any help and that he would pass the State examination without any problem.

Mr. Long reminded the Plaintiff that he had to be certified in order to remain as a deputy sheriff. The certification is, however, not a requirement for a jail security officer position. The Plaintiff told Mr. Long that he would not under any circumstances accept a demotion to security officer and seemed insulted that Mr. Long would even mention this demotion to him.

Finally, when the course was completed and the Plaintiff took the state examination, his grade, certified by the State, was 53. The minimum score for passing the State examination is 70. Of the approximately 350 students taught by the Plaintiff's instructor, the Plaintiff's grade is the lowest score ever made.

After the examination, the Plaintiff went on vacation. When he returned to his job during the first week of January, 1981, Sheriff Wall called the Plaintiff in for a meeting. During this brief meeting and in the presence of Mr. Lloyd and Mr. Long, Sheriff Wall told the Plaintiff that his services were no longer needed.

There was conflicting testimony as to whether a transfer back to jail security officer was mentioned at the exit interview. The Plaintiff testified he requested the transfer at the meeting but was told there were no vacancies. The other participants in the meeting testified that a transfer was not requested at the meeting. The evidence, however, indicates that the participants were aware that at some time the Plaintiff informally broached the subject of transfer to jail security officer. A formal written request, however, has never been made. Further, Sheriff Wall believed there were only two vacancies at that time for jail security officer. Both vacancies had been promised, although not guaranteed to two female employees.

The payroll records indicated that there were actually three and not two vacancies as jail security officer at the time of the Plaintiff's discharge. In light of the turnover in this position and the cumbersome duties of a sheriff, the Court finds it entirely credible that Sheriff Wall would not know of the third vacancy without an opportunity to review the records. Further Sheriff Wall had lost his confidence in the Plaintiff and was disappointed with the Plaintiff's attitude and effort during the course.

Sheriff Wall did testify that the Plaintiff's law enforcement experience was superior to the experience of the two female employees promised the vacancies. Sheriff Wall, however, as he told the Plaintiff, had no further need for the Plaintiff's services. Sheriff Wall had lost confidence in the Plaintiff's ability and integrity in light of his lackadaisical performance in the school and the Plaintiff's misrepresentations about his performance.

◼ The Court finds that Sheriff Wall's good faith dissatisfaction with the Plaintiff's efforts during the course and on the State examination is a legitimate non-discriminatory reason for refusing to retain the Plaintiff in the lesser position of jail security officer. Integrity, honesty, and a concerted effort in one's duties are legitimate qualifications to demand of any employee in any position, whether a corporate vice president or a maintenance person.

◼ The Plaintiff contends that Sheriff Wall's dissatisfaction with the Plaintiff's attitude in the course is pretextual because in the Defendants' position statement with the EEOC it is stated that the Plaintiff was not transferred because there was not an available vacancy. Sheriff Wall's good faith veracity in the EEOC statement, however, does not negate the fact that *at the time of the exit interview* Sheriff Wall no longer had any need for the Plaintiff's services in any position, because of his lack of faith in the Plaintiff.

The Plaintiff was hired by Sheriff Wall in May, 1979. Within three or four months he was promoted by Sheriff Wall to deputy sheriff. He was retained on the payroll as deputy sheriff even though his certification expired and he could no longer perform the duties of a law enforcement officer. The Plaintiff did not present any evidence that during his employment he was subjected to racial harassment, was denied better as-

signments or equipment, or was in any manner treated differently than white employees. Evidently, the Plaintiff did not have any complaints with his job until he was discharged. Further there was not any evidence that other black employees were subject to discrimination.

Although there was evidence that some white employees who failed the test were retained, there was not any evidence that white employees, who displayed an attitude similar to the Plaintiff's concerning the certification requirements, were retained.

■ In light of the complete absence of discriminatory animus during the Plaintiff's employment, the fact that the Plaintiff was hired, promoted, and retained after his certification expired by Sheriff Wall, and the Plaintiff's attitude, effort and misrepresentations during his .training course, the Court finds that the Plaintiff failed to prove Sheriff Wall's articulated reason for failing to transfer the Plaintiff was pretextual or that the Plaintiff was denied the transfer because of his race. There is simply a complete absence of evidence to indicate that suddenly on January 7, 1981 Sheriff Wall decided to subject the Plaintiff to disparate treatment because of his race.

The only evidence presented by the Plaintiff to suggest that Sheriff Wall was racially bias was the testimony of Saralyn Brayboy Stegall. Mrs. Stegall testified that during her hiring interview with Sheriff Wall, he made reference to a statue of Martin Luther King in a park across the street from his office, calling it "something else for those niggers". Mrs. Stegall further testified that Sheriff Wall told her that if he hired her he could "hire one less nigger" since Mrs. Stegall was an American Indian. After Mrs. Stegall joined the Sheriff's Department, Sheriff Wall allegedly told her not to be emotional when a black prisoner was beaten in jail because the "nigger got what he deserved."

Mrs. Stegall admitted on cross-examination that no one else was present when Sheriff Wall made these statements, that she never reported or complained about these statements until contacted by the Plaintiff's attorney and she took the job despite Sheriff Wall's alleged comment that he was hiring her because she was a female American Indian. It is also significant that Mrs. Stegall never informed anyone about the alleged comments until after she was asked to tender her resignation .because she failed the training course. Sheriff Wall denied that any of the statements attributed to him by Mrs. Stegall were ever made.

■ The Court, after carefully judging the credibility of the witnesses, finds Mrs. Stegall's testimony totally incredible. Mrs. Stegall had an obvious axe to grind with Sheriff Wall because of her forced resignation, she accepted the job in light of the alleged statements, she failed to inform anyone about the alleged comments until after her resignation, there are no other witnesses to corroborate her alleged statements and even the Plaintiff failed to testify as to any discriminatory comments made during his employment. Further, even if it is assumed that Sheriff Wall harbored some sort of secret discriminatory animus toward blacks, it is beyond belief that an elected official would be so stupid or incompetent when speaking with a total stranger, who is also a member of a minority, as to make disparaging remarks about a protected race. The Court, therefore, finds that Mrs. Stegall's allegations lack veracity.

Mr. W.J. Vincent, the Jail Administrator from 1978 until his retirement in July 1980, was called by the Plaintiff as his witness. On cross-examination Mr. Vincent testified that he never saw any indication of racial discrimination in the jail and if it had existed it would have come to his attention.

Mr. Carmichael, a black male, failed the state certification examination and was not discharged by Sheriff Wall. He subsequently re-took the examination, passed it, and was promoted by Sheriff Wall to deputy sheriff. The Plaintiff discounts Mr. Carmichael's promotion because it occurred after the Plaintiff filed his EEOC charge challenging "the firing of black deputies

who had failed the examination." There is not any evidence, however, concerning the "firing of black deputies". The record shows only that the Plaintiff, who happens to be black, was discharged for a legitimate reason.

Although the Court placed little weight, if any, on the limited statistical data introduced at the trial, the data would not appear to indicate that there was a determined effort to eliminate blacks in the Sheriff's Department. For instance, when Sheriff Wall assumed office there were 54.2% white males, 22.5% white females, 20.0% black males and 3.3% black females. During Sheriff Wall's tenure there were minor fluctuations in the black/white ratios. When Sheriff Wall left office, there were .55.9% white males, 19.6% white females, 17.4% black males, 6.5% black females, and .7% other males. Thus when Sheriff Wall entered the department blacks comprised 23.3% of the work force and when Sheriff Wall left his office blacks comprised 23.9% of the work force.

Sheriff Wall, also appointed a black male, Julius Lloyd, to the position of Jail Administrator. This position is an extremely important position in the Sheriff's Department as the Jail Administrator possesses overall supervision and control of the jail. The Jail Administrator position is tantamount to a warden in a prison. It is unlikely that Sheriff Wall would appoint a black male to a position second in command to the Sheriff, if Sheriff Wall had a bias against blacks.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the Title VII claims as well as the claims brought pursuant to 42 U.S.C. § 1981.

Title VII, 42 U.S.C. § 2000e–2(a)(1), provides in pertinent part that:

It shall be an unlawful employment practice for an employer—

(1) ... to discharge any individual ... *because of such individual's race* (emphasis added).

Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons. . . .

■ Title VII and Section 1981 do not say that a person may not be discharged if he is black, they say, in effect, an employee may not be discharged because he is black. Accordingly, under Title VII the burden remains with the Plaintiff to prove by a preponderance of the evidence that he was discriminated against because of his black race. *See, e.g., Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

■ The Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 802, 93 S.Ct. 1817, 1820, 1824, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case, the Plaintiff must prove:

actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act."

*Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *see also, Texas Department of Community Affairs v. Burdine, supra; McDonnell Douglas Corp. v. Green, supra.*

■ The Plaintiff, in a wrongful transfer action, may establish a *prima facie* case of discrimination under the *McDonnell Douglas* model by showing that: (1) he was a member of a protected class; (2) he was qualified for the position for which

he sought transfer; (3) he was not selected for transfer; and (4) the employer filled the requested position with a non-class member. In this case, the Plaintiff satisfied his *prima facie* case by showing he was a member of a protected class who was refused a transfer to a position that was filled by a white. The Plaintiff's previous work experience further satisfied the Plaintiff's burden of proving he was qualified for the position of jail security officer.

■ If the Plaintiff succeeds in proving a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. This burden is merely a burden of production of evidence and the burden of persuasion does not shift to the Defendant. *Id.* at 256–57, 101 S.Ct. at 1095–96. If the Defendant carries this burden of production, the Plaintiff must then prove by a preponderance of the evidence that the proffered reasons were not the true reasons for the employer's decision, but rather were a pretext for discrimination. *Id.* The burden of showing that the reasons articulated by the Defendant are pretextual merges with the Plaintiff's ultimate burden of persuading the Court that he was the victim of racial discrimination. *Id.*

■ In Title VII cases, such as the instant action, in which disparate treatment is the basis of the Plaintiff's claims, the Plaintiff must prove intentional discrimination. It must be shown by the Plaintiff that the action by the employer was taken because of the employee's race. The intent of the employer must be to discharge an employee because the employee is black. The employer's intent or motivation may be shown by inferences rather than direct evidence of intentional discrimination, but the evidence, whether direct, circumstantial, or otherwise must establish by a preponderance of the evidence the discriminatory intent and not simply that the employee was a member of a protected class who was denied a requested transfer. *Texas De-*

*partment of Community Affairs v. Burdine, supra; Board of Trustees of Keene State College v. Sweeney, supra; Marquez v. Omaha District Sales Office*, 440 F.2d 1157 (8th Cir.1971); *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir.1969).

■ A plaintiff cannot prove that the employer's reason for his discharge was pretextual merely by claiming that the employer's action was mistaken. The law is clear that an employer's reason for his action may be a good reason, a bad reason, a mistaken reason, or no reason at all, as long as the decision was not based on race or other unlawful discriminatory criteria. *Sanchez v. Texas Commission on Alcoholism*, 660 F.2d 658, 662 (5th Cir.1981); *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1036 (5th Cir.1980); *Corley v. Jackson Police Department*, 566 F.2d 994, 1003 n. 14 (5th Cir.1978); *Silberhorn v. General Iron Works Co.*, 584 F.2d 970, 972 (10th Cir. 1978); *Tims v. Board of Education*, 452 F.2d 551 (8th Cir.1971). An employer is not required to prove that its decision was correct; the trier of fact need only determine that the defendant, in good faith *believed* the plaintiff's performance to be unsatisfactory and that the asserted reason for the action was not a mere pretext for discrimination. *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982); *Jones v. Los Angeles Community College District*, 702 F.2d 203, 205 (9th Cir.1983).

■ The decision as to what criteria shall be considered in making employment decisions lies fully in the hands of the employer, as long as discriminatory criteria are not applied. *Bay v. Goodyear Tire & Rubber Co.*, 23 Empl.Prac.Dec. (CCH) ¶ 30,903 at p. 15673 (S.D.Tex.1980), *aff'd mem.*, 638 F.2d 1233 (5th Cir.1981), *cert. denied*, 454 U.S. 862, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981).

■ A plaintiff's general assertion that he was discriminated against is insufficient as a matter of law to show that the stated reason for the action is a pretext. *Munoz*

*v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators,* 563 F.2d 205 (5th Cir. 1977); *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir.1980). Also a plaintiff cannot rebut the stated reason for his discharge merely by showing that he (1) meets the minimum qualifications for the job, (2) was hired, and (3) believes he performed satisfactorily. *Smith v. Flax,* 618 F.2d 1062 (4th Cir.1980); *Jackson v. City of Killeen,* 654 F.2d 1181 (5th Cir.1981); *Patmon v. Van Dorn Co.,* 498 F.2d 544 (6th Cir.1974).

In light of the above principles and after carefully weighing the evidence the Court finds that the Plaintiff failed to prove by a preponderance of the evidence that Sheriff Wall's decision to no longer retain the Plaintiff either as a deputy sheriff or a jail security officer because of his conduct during the course was pretextual. Further, the Court finds that the Plaintiff has failed to persuade the Court that he was discharged or not demoted because of his race. As noted in the findings of fact, Sheriff Wall employed the Plaintiff, promoted the Plaintiff, and retained the Plaintiff in the higher paying position of deputy sheriff even though the Plaintiff was not certified. The Plaintiff failed to specify any grievance he had with his treatment by Sheriff Wall until the Sheriff decided to discharge him because of the Plaintiff's misrepresentations and conduct in refusing assistance with the course. Sheriff Wall made every effort to help the Plaintiff with the certification requirement. The Plaintiff, however, failed to do his part to justify Sheriff Wall placing any further trust in him in any position. The Plaintiff did not cross over the threshold and enter the room showing he was not transferred *because* he was black.

The Court concludes that since Sheriff Wall did not terminate the Plaintiff and refuse to transfer him because of his race, the Plaintiff is not entitled to relief and judgment should be entered for the Defendants.

Having decided that Sheriff Wall did not discriminate against the Plaintiff, it is unnecessary for the Court to reach the Defendant Board's motion that it is not the Plaintiff's employer. Accordingly, the Court should deny the motion on the grounds of mootness. Similarly, having found that the Board is an agent of the County with respect to the issue of subject matter jurisdiction the ground justifying the Plaintiff's motion to amend the Complaint is nonexistent. Accordingly, the motion should be denied.

Any finding of fact which is determined also to be a conclusion of law is so deemed, and any conclusion of law which is determined also to be a finding of fact is so deemed.

Accordingly, pursuant to the findings of fact and conclusions of law set forth above, IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that:

(1) This action under Title VII and 42 U.S.C. § 1981 is *dismissed with prejudice* as to both Defendants;

(2) Each party shall pay his and its own costs, including attorney's fees;

(3) The Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED;

(4) The Defendant Board's motion to dismiss because the Plaintiff is not an employee of the Board is DENIED; and

(5) The Plaintiff's motion to amend the Complaint is DENIED.