# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00710-CV

### The University of Texas-Pan American and The University of Texas System, Appellants

### v.

### Howard Miller, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-09-002541, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the University of Texas-Pan American (UTPA) and the University of Texas System (UT System) complain of the district court's denial of their plea to the jurisdiction. Appellee Howard Miller sued UTPA, his former employer, and the UT System pursuant to the Texas Commission on Human Rights Act[1] (TCHRA) alleging that he was subjected to a hostile work environment and disparate treatment in the form of age, disability, color, and race discrimination. *See* Tex. Lab. Code § 21.051. Miller further alleged that he was wrongfully discharged in retaliation for opposing discriminatory practices and reporting misappropriation of funds by the president and vice president of UTPA. *See id.* § 21.055. On appeal, UTPA and the UT System contend that the district court erred in denying their plea to the jurisdiction as to all of Miller's claims against the UT System because the UT System was not Miller's employer under the

---

[1] *See generally* Tex. Lab. Code §§ 21.001–.556.

TCHRA, *see id.* § 21.002(8), and because Miller failed to exhaust his administrative remedies by not naming the UT System in his charge of discrimination. *See id.* §§ 21.201, .254. Appellants further contend that the district court erred in denying their plea to the jurisdiction as to Miller's hostile work environment claims against both UTPA and the UT System because Miller failed to allege facts sufficient to establish jurisdiction over such a claim.[2] For the reasons that follow, we reverse the district court's denial of the plea to the jurisdiction as to Miller's hostile work environment claim and dismiss that claim for lack of jurisdiction. We affirm the district court's denial of the plea to the jurisdiction in all other respects.

### FACTUAL AND PROCEDURAL BACKGROUND

Miller was hired as the chief of police for UTPA in 1992. The UT System authorized Miller's employment at UTPA, he was subject to the rules, regulations, and policies of the UT System, and he served at the pleasure of the UTPA president and under the supervision of the UTPA vice president for business affairs. As a requirement of his position, Miller was to maintain a Texas peace officer license in good standing with the Texas Commission of Law Enforcement Office Standards and Education (TCLEOSE). *See* Tex. Occ. Code §§ 1701.301, .307. TCLEOSE standards include the requirement that a licensee demonstrate weapons proficiency to obtain and maintain a license. *See id.* §§1701.307, .308, .355.

Miller was commissioned as a peace officer through appointment with the UT System Office of Department of Police (ODOP), which was under the direction of John Slettebo, the director

---

[2] The plea to the jurisdiction did not challenge the trial court's jurisdiction over Miller's retaliatory discharge claim as to UTPA, and it is not a part of this appeal.

of police of the UT System. *See* 37 Tex. Admin. Code § 211.1 (Tex. Comm'n on Law Enforcement Officer Standards and Educ.; Definitions); Tex. Educ. Code § 51.203. Slettebo was responsible for authorizing and approving qualifications of police personnel commissioned as peace officers for the UT System and its institutions. Under the UT System's police inspection program, the ODOP is responsible for conducting biannual inspections to evaluate performance and submitting reports to the appropriate levels of administration regarding such matters as compliance, efficiency, and effectiveness.

At some time in 2007 or 2008, Miller either personally filed a complaint, or forwarded to Slettebo an anonymous complaint he had received, alleging misappropriation of funds by the UTPA president and vice president. On September 9 and 10, 2008, in the course of an inspection of UTPA's police department, the ODOP discovered that UTPA's records did not contain a current firearms qualification score for Miller, which was required by both TCLEOSE, *see* Tex. Occ. Code § 1701.355, and ODOP policy. Following further document review and a meeting with Miller to discuss the deficiency, an ODOP inspector filed two written complaints against Miller alleging that his firearms qualifications record was not current, he had falsified his qualification record, and he had verbally berated the inspectors during the inspection.

Upon receipt of the complaints, Slettebo assigned the assistant director of police Mike Tacker to conduct an internal investigation. Tacker provided Miller with notice of the complaints, interviewed him, and invited him to provide a written response, which Miller subsequently did. On September 14, 2008, Miller was placed on suspension with pay pending the investigation. During the investigation, UTPA received two additional complaints against Miller,

one alleging that Miller retaliated against an officer who cooperated in the investigation and the other involving the use and condition of the university computer Miller had used at home. Following the investigation, Slettebo determined that the complaints against Miller should be sustained. On September 26, 2008, Slettebo informed Miller that he intended to terminate his commission with ODOP and recommend to the vice president for business affairs of UTPA that his employment be terminated. Miller was given the opportunity to, and did, respond. On October 2, 2008, Slettebo terminated Miller's commission with ODOP, and the following day UTPA president terminated Miller's appointment as chief of police.

On March 23, 2009, Miller filed a charge of discrimination with the Texas Workforce Commission–Civil Rights Division (TWC). In the complaint, Miller named UTPA as the employer who had discriminated against him and alleged that he had been subjected to a hostile work environment and disparate treatment in the form of age, disability, color, and race discrimination and had been wrongfully terminated in retaliation for reporting misappropriation of funds. In response, UTPA filed a position statement denying the charges. The UT System provided information for the position statement, which included copies of the UT System's policy program, the Miller investigation report, and witness statements from four UT System employees. On May 26, 2009, the TWC closed its file on Miller's charge, without making any findings, and issued a notice of right to file civil action.

On August 7, 2009, Miller filed suit against UTPA and the UT System asserting the same hostile work environment, disparate treatment, and wrongful termination claims made in his charge of discrimination. UTPA and the UT System filed a plea to the jurisdiction seeking (1)

4

dismissal of all of Miller's claims against the UT System based on the lack of a direct employment relationship and Miller's failure to exhaust his administrative remedies against the UT System and (2) dismissal of Miller's hostile work environment claims against both UTPA and the UT System for failure to plead facts sufficient to support such a claim. The district court denied the plea to the jurisdiction, and this appeal followed.

## DISCUSSION

### Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Sovereign immunity deprives a trial court of subject matter jurisdiction in suits against the state and certain governmental units unless the state consents to suit and is therefore properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223, 226 (Tex. 2004). "For a suit to proceed against a governmental unit under a statute [that waives sovereign immunity], the court must first look to the terms of the Act to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope.'" *Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.—Austin 2004, no pet.) (quoting *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

Because subject matter jurisdiction presents a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause.

5

*Miranda*, 133 S.W.3d at 226. To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Westbrook*, 231 S.W.3d at 405; *Miranda*, 133 S.W.3d at 226. When the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. However, a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). In addition, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider relevant evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issue. *Miranda*, 133 S.W.3d at 223, 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000); *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 831 (Tex. App.—Austin 2010, no pet.). Where, as here, the challenge to jurisdictional facts does not implicate the merits of the case, and the facts are undisputed, the trial court rules on the plea to the jurisdiction as a matter of law, and the appellate court reviews the ruling de novo.[3] *Miranda*, 133 S.W.3d at 226–27; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.).

---

[3] If the jurisdictional facts are disputed, the court must make the necessary findings to resolve the issue. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004); *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 831–32 (Tex. App.—Austin 2010, no pet.). These findings may be challenged for legal and factual sufficiency, and we review the trial court's jurisdictional decision based on found facts de novo. *Good Shepherd Med. Ctr.*, 306 S.W.3d at 832; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.). When the challenge to a jurisdictional fact implicates the merits of the action, there is a different standard. *See Miranda*, 133 S.W.3d at 227–28; *Poindexter*, 306 S.W.3d at 806.

UTPA's and the UT System's issues also involve matters of statutory construction, which we review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010).

**Suit Against Party Other Than Direct Employer**

In their first issue, UTPA and the UT System contend that the district court erred in denying their plea to the jurisdiction as to the UT System on the ground that, because the UT System was not Miller's employer, Miller has failed to establish that the UT System waived its sovereign immunity under the TCHRA. As a governmental unit, the UT System enjoys sovereign immunity unless it is waived by statute. *See Miranda*, 133 S.W.3d at 224; *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The TCHRA provides a limited waiver by including counties, municipalities, state agencies, and state instrumentalities in the definition of "employer." *See* Tex. Lab. Code 21.202(a). Generally, only employers may be liable for unlawful employment practices under the TCHRA. *See id.* §§ 21.051, .055. Because it is undisputed that Miller did not have a direct employment relationship with the UT System, the issue turns on whether it can be sued under the TCHRA in the absence of such a relationship. *See Cooke*, 149 S.W.3d at 704.

Miller contends that his claims against the UT System can be maintained in the absence of a direct employment relationship under the standard articulated by the supreme court in

*NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999). In *Rennels*, the supreme court adopted the reasoning of the D.C. Circuit in *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), that a direct employment relationship is not required if the plaintiff can show that an employer used its position of power and control, adversely and wrongfully, to interfere with the plaintiff's employment relationship with a third party. *Id.* at 147; *see Sibley*, 488 F.2d at 1341–43. Adapting these elements to the TCHRA, the supreme court established a three-pronged test for *Sibley* standing: A plaintiff must show that (1) the defendant is an employer within the statutory definition, (2) an employment relationship exists between the plaintiff and a third party, and (3) the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria. *Rennels*, 994 S.W.2d at 147.

The parties do not dispute that the first two elements are met in this case. The UT System is an employer under the definition in the TCHRA, *see* Tex. Lab. Code § 21.002(8), and Miller was an employee of a third party, UTPA. The parties, however, join issue as to the third prong. UTPA and the UT System challenge the jurisdictional fact of whether the UT System controlled access to Miller's employment and denied or interfered with that access based on unlawful criteria. Because this issue involves a challenge to the existence of jurisdictional facts, we must consider the relevant evidence submitted by the parties at the hearing on the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28*; Blue*, 34 S.W.3d at 555. The evidence included Miller's charge filed with the TWC, UTPA's position statement filed in response, a letter from Slettebo informing Miller of his intention to terminate his commission, a letter from Slettebo terminating Miller's commission, and a letter to Miller from UTPA's president terminating Miller's employment.

8

The undisputed evidence shows that the UT System ODOP was in a position to and did exert control over UTPA's employment decisions. Miller's employment with UTPA was dependent on his being commissioned through appointment with the UT System ODOP. *See* 37 Tex. Admin. Code § 211.1 (defining "commissioned" as "hav[ing] been given the legal power to act as a peace officer . . . ."). When Slettebo terminated Miller's commission, Miller was no longer legally qualified to act as police chief for UTPA. *See id.* Moreover, in his letter indicating his intention to terminate Miller's commission, Slettebo also stated that he was forwarding the letter to the vice president of UTPA "with a recommendation that [Miller's] employment with the University of Texas at Pan Am be terminated." The relationship between the UT System ODOP, whereby the ODOP commissions the peace officers employed by the various institutions comprising the UT System, coupled with the legal requirement that an officer be commissioned, *see id.*, put the UT System in a position to control whether Miller was qualified to maintain his employment with UTPA. The evidence also shows that Slettebo exerted that control by terminating Miller's commission and recommending termination of his employment and that UTPA terminated Miller's employment on the day following Slettebo's recommendation.

On this record, we conclude that Miller has shown that the UT System both controlled Miller's access to employment with UTPA and interfered with that access and that he is entitled to *Sibley* standing under the TCHRA. *See Rennels*, 994 S.W.2d at 147 (plaintiff showing defendant was in position to interfere with employment relationship with third party had *Sibley* standing). Therefore, Miller has established that the UT System's immunity is waived under the TCHRA, and the district court properly denied the plea to the jurisdiction on this ground. *See Miranda*,

9

133 S.W.3d at 228; *Rennels*, 994 S.W.2d at 147. We overrule UTPA's and the UT System's first issue.

**Exhaustion of Remedies**

In their second issue, UTPA and the UT System contend that the trial court erred in refusing to dismiss Miller's claims against the UT System because Miller failed to exhaust his administrative remedies against the UT System. It is well settled that an action under the TCHRA requires an exhaustion of administrative remedies. *See Hoffmann-La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (exhaustion of remedies mandatory prerequisite to filing civil action under the TCHRA). It is also clear that the failure to exhaust the TCHRA's administrative remedies is a jurisdictional defect. *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008) (noncompliance with Commission procedures deprives courts of subject matter jurisdiction). Under the TCHRA, the exhaustion of administrative remedies begins when a party files a complaint with the TWC. *See* Tex. Lab. Code § 21.201; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010).

UTPA and the UT System do not contend that Miller failed to file a section 21.201 complaint. Rather, their argument is based on the undisputed fact that Miller did not expressly name the UT System as an employer who discriminated against him in his complaint. Section 21.201, however, does not require that a complaint state the name of the employer. *See* Tex. Lab. Code § 21.201(c)(3); *Overstreet v. Underwood*, 300 S.W.3d 905, 909 (Tex. App.—Amarillo 2009, pet. denied). Section 21.201 provides only that a complaint state "facts sufficient to enable the [TWC] to identify the *respondent*." Tex. Lab. Code § 21.201(c)(3) (emphasis added). "Respondent means

10

the person charged in a complaint under [Chapter 21] and may include an employer, employment agency, labor organization, or joint labor-management committee that controls an apprenticeship or other training or retraining program, including an on-the-job training program." *Id.* § 21.002(13). Thus, it appears from the plain language of the statute that a party may be identifiable as a "respondent" charged in the complaint without being expressly named. *See* Tex. Lab. Code § 21.201(c)(3), .002(13); *Marks*, 319 S.W.3d at 663.

In interpreting section 21.201, we are also guided by federal law. The TCHRA was enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," Tex. Lab. Code § 21.001(1), and is "modeled after federal civil rights law." *Rennels*, 994 S.W.2d at 144. Because one of the primary goals of the TCHRA is to coordinate state and federal employment discrimination law, in interpreting section 21.201(c)(3), we may look to federal law interpreting analogous Title VII provisions as authority. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010) (analogous federal statutes and cases interpreting them guide courts' reading of TCHRA); *Speciality Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam) (because purpose of TCHRA is to bring Texas law in line with federal law, federal case law may be cited as authority); *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87–88 (Tex. App.—Austin 1995, no writ) (court looks to analogous federal law when appropriate); *cf. Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 503, 509 (Tex. 2012) (when amendment to Title VII enacted and similar amendment to TCHRA not enacted, Title VII and TCHRA no longer analogous as to subject of amendment and Texas Supreme Court looks solely to its precedent).

Like the TCHRA, Title VII requires that "a person claiming to be aggrieved" must exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC) before seeking judicial relief. 42 U.S.C. § 2000e-5(b). Generally, only parties previously identified as respondents in charges filed with the EEOC are subject to liability under Title VII. *Terrell v. United States Pipe & Foundry, Co.*, 644 F.2d 1112, 1122 (5th Cir. 1981); *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 147 (S.D. Tex. 1994). However, because most complaints are made by persons unfamiliar with the technicalities of formal pleadings, federal courts applying section 2000e-5(b) construe the complaint liberally and "look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006); *accord Bostic v. Wall*, 588 F. Supp. 994, 997 (W.D.N.C. 1984), *aff'd* 762 F.2d 997 (4th Cir. 1985); *Kern v. General Elec.*, No. 3-02-CV-2435-L, 2003 US. Dist. LEXIS 10331, at *16 (N.D. Tex. June 17, 2003); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied) (citing *Preston v. Dep't of Family & Prot. Servs.*, 222 Fed. App'x 353, 356 (5th Cir. 2007)). "The Courts have, therefore, recognized exceptions to the general rule that a defendant must be named in the charge before he can be sued." *Bostic*, 588 F. Supp. at 997; *accord Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980); *Burrell v. Truman Med. Ctr., Inc.*, 721 F. Supp. 230, 233 (W.D. Mo. 1989).

One recognized exception is the "actual notice exception." *Burrell*, 721 F. Supp. at 233; *accord Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985); *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1156 (5th Cir. 1979); *David v. Weidner*, 596 F.2d 726, 729 (7th Cir. 1979); *Bostic*, 588 F. Supp. at 997. A primary purpose of the charge is to trigger an investigation so that voluntary

12

compliance is achieved through a conciliatory process. *Pacheco*, 448 F.3d at 788–89. Therefore, suit is not barred against an unnamed party who has been provided adequate notice of the charge and given the opportunity to participate in conciliation proceedings. *Greenwood*, 778 F.2d at 451 ("The filing of an EEOC charge is unnecessary where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance."); *Bostic*, 588 F. Supp. at 997; *Bernard v. ATC Vancom*, No. 3:04-CV-1820-D, 2005 U.S. Dist. LEXIS 881, at *14 (N.D. Tex. Jan. 20, 2005); *Morris v. Drs. Coney, Husbands, McCullough, Oliver, Vines, & Assocs., P.A.*, No. 3:96-CV-2464-D, 1998 U.S. Dist. LEXIS 1587, at*8 (N.D. Tex. Feb. 9, 1998).

In this case, after identifying UTPA as the employer who discriminated against him, Miller's complaint alleges acts of discrimination by three individuals: the president and vice president of UTPA and "UT Police System Director of Police, John Slettebo."[4] The complaint further alleges that "John Slettebo, Director of Police" notified Miller of his termination.[5] The record shows that there was a relationship between the UT System ODOP and UTPA regarding the commissioning, employment, and supervision of police officers. Although UTPA and the UT System deny receiving notice "from the [TWC]" or "participat[ing] in conciliation," the evidence shows that the UT System received actual notice, presumably from UTPA, and not only had the

---

[4] We observe that the TCHRA creates a cause of action only against an employer and not against supervisors or individual employees. *See* Tex. Lab. Code §§21.051–.059, .117, .119; *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ).

[5] This statement requires clarification. The record shows that Slettebo notified Miller that his *commission* was terminated and the UTPA president notified him that his *employment* was terminated.

13

opportunity to, but actually did, participate in the TWC's conciliation proceedings by compiling and providing information for the response to Miller's complaint. Based on the undisputed facts, and construing the complaint liberally, *see Pacheco*, 448 F.3d at 788–89, we conclude that the UT System was provided adequate notice of the charge and opportunity to participate in conciliation and Miller did not fail to exhaust his administrative remedies as to the UT System. *See Greenwood*, 778 F.2d at 451; *Bostic*, 588 F. Supp. at 997. Therefore, we hold that the district court did not err in denying UTPA's and the UT System's plea to the jurisdiction as to the UT System. *See Miranda*, 133 S.W.3d at 228; *Good Shepherd Med. Ctr.*, 306 S.W.3d at 831–32; *Poindexter*, 306 S.W.3d at 806. We overrule UTPA's and the UT System's second issue.

**Hostile Work Environment Claim**

In their third issue, UTPA and the UT System assert that the trial court erred in failing to dismiss Miller's hostile work environment claim against both defendants because Miller's pleadings failed to allege facts sufficient to establish jurisdiction. "A hostile work environment claim entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Bartosh*, 259 S.W.3d at 324. Such a claim is a continuing violation composed of a series of separate acts that collectively constitute one unlawful employment practice. *Santi v. University of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Bartosh*, 259 S.W.3d at 324. It is not sufficient for the plaintiff to show a series of discriminatory acts. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). Rather, a plaintiff must show an organized scheme leading to and including a present violation such that it is the

14

cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.*; *Santi*, 312 S.W.3d at 805. The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, *Santi*, 312 S.W.3d at 804–05, and a complaint is timely if an act contributing to the claim occurred within the statutory filing period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Sasse v. United States Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005).

Because hostile environment claims are based on the cumulative effect of repeated acts, they are different in nature from claims based on discrete acts. *Morgan*, 536 U.S. at 115. One-time events such as termination, failure to hire or promote, denial of transfer, or demotion are discrete acts that are conceptually different from hostile environment claims and "cannot be lumped together with the day-to-day pattern of racial harassment . . . ." *Huckabay*, 142 F.3d at 240; *Olivarez v. The Univ. of Tex. at Austin*, No. 03-05-00781-CV, 2009 Tex. App. LEXIS 3796, at *7, 13 (Tex. App.—Austin May 21, 2009, no pet.) (mem. op.) (citing *Huckabay*); *see also Santi*, 312 S.W.3d at 805–06 (decision not to renew contract and denial of attempt to license materials were two discrete acts that did not constitute allegation of continuing violation). " Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113.

Here, Miller alleges only two specific acts of discrimination—his suspension and his termination. Although he generally asserts that he was subjected to a hostile work environment during the last six months of his employment, he identifies no other acts in support of his claim. Suspension and termination are the kind of easily identifiable discrete acts to which the continuing violation doctrine does not apply. *See Morgan*, 536 U.S. at 114; *O'Connor v. City of Newark*,

15

440 F.3d 125, 127 (3rd Cir. 2006); *Santi*, 312 S.W.3d at 805; *Bartosh*, 259 S.W.3d at 324 ("Termination does not qualify as a predicate act supporting the hostile-work-environment claim; termination is not itself harassing conduct."). Both constitute "separate actionable 'unlawful employment practice[s],'" *see Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2003) (quoting *Morgan*, 536 U.S. at 114), and even if based on discriminatory criteria, "cannot properly be characterized as part of a continuing hostile work environment." *Sasse*, 409 F.3d at 783; *accord Huckabay*, 142 F.3d at 240; *Santi*, 312 S.W.3d at 805–06.

In addition, of these two discrete acts, only Miller's termination occurred within 180 days prior to his complaint, the statutory limitations period. *See* Tex. Lab. Code § 21.202(a) (complaint must be filed within 180 days after alleged unlawful conduct). Miller contends that his timely complaint regarding termination operates to bring his otherwise time-barred allegation based on suspension into the scope of his hostile environment claim. However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Pegram*, 361 F.3d at 279; *accord Sasse*, 409 F.3d at 783. Nor do discrete acts that fall within the statutory time period make timely acts that fall outside the time period. *Morgan*, 536 U.S. at 112. Therefore, Miller "cannot use a termination that fell within the limitations period to pull in the time-barred act [of suspension]" in an effort to characterize them as part on an ongoing violation. *See Morgan*, 536 U.S. at 113. Even considering the intent of Miller's pleadings and accepting the allegations as true, we conclude that he has not alleged facts sufficient to raise the issue of a continuing scheme as required for a hostile work environment claim and the district court erred in denying UTPA's and the UT System's plea to the jurisdiction with respect to Miller's hostile work

16

environment claim. *See Miranda*, 133 S.W.3d at 226 (plaintiff has initial burden to plead facts affirmatively showing trial court has jurisdiction); *Good Shepherd Med. Ctr.*, 306 S.W.3d at 831 (same); *Morgan*, 536 U.S. at 113–114; *Santi*, 312 S.W.3d at 805–06. Further, repleading cannot cure Miller's failure to timely file a charge complaining of any act that is part of a hostile work environment. *See* Tex. Lab. Code § 21.202(a); *Morgan*, 536 U.S. at 118; *Sonnichsen*, 221 S.W.3d at 635. We sustain UTPA's and the UT System's third issue.

## CONCLUSION

We reverse the district court's denial of the plea to the jurisdiction as to Miller's hostile work environment claim and dismiss that claim for lack of jurisdiction. We affirm the district court's denial of the plea to the jurisdiction in all other respects.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed in part; Reversed and Dismissed in part

Filed: August 28, 2013

17