**Fannie H. CROCKETT, Plaintiff,**

v.

**ECKERD DRUGS OF NORTH CAROLINA, INC., Defendant.**

No. C–C–84–154–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Aug. 16, 1985.

---

John T. Nockleby and Geraldine Sumter, Ferguson, Watt, Wallas & Adkins, Charlotte, N.C., for plaintiff.

James S. Sidman, Clearwater, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

This is an action brought pursuant to 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The complaint was filed on March 26, 1984. Plaintiff seeks injunctive relief to remedy an alleged unlawful termination of her employment because of her race and in retaliation for raising complaints about the differences in treatment afforded black and white employees.

Plaintiff seeks reinstatement, back pay, fringe benefits and interest.

The case was tried before the court without a jury on June 12, 1985.

Based on the evidence and the exhibits presented at trial, and after hearing and weighing the evidence, appraising the demeanor and credibility of the witnesses in light of their interest, and considering the arguments of counsel, the court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, makes the following

## FINDINGS OF FACT

### I.

### JURISDICTION

1. This court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f).

2. The plaintiff has complied with the administrative requirements of Title VII (42 U.S.C. § 2000e *et seq.*)

## II.

### PARTIES

3. Plaintiff Fannie H. Crockett is an adult black female resident of Charlotte, Mecklenburg County, North Carolina.

4. Defendant Eckerd Drugs of North Carolina, Inc. ("Eckerd"):

(a) is a corporation which transacts business in North Carolina;

(b) is involved in the retail merchandising business, and operates retail stores, a distribution center, and its district offices in Mecklenburg County, North Carolina; and

(c) is a person within the meaning of 42 U.S.C. § 1981, and an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

## III.

### FACTS

5. Plaintiff has exhausted all administrative requirements necessary to bring this action.

6. Plaintiff began her employment with Eckerd on March 22, 1979.

7. Plaintiff was employed with defendant until her discharge on June 13, 1983, as a material handler in the preprint warehouse of the Charlotte distribution center.

8. Her work performance was considered satisfactory. Testimony by witnesses for both plaintiff and defendant depict her to be a capable, reliable, and cooperative employee.

9. Defendant's company implemented a rule in mid-1979 for the entire distribution center complex, including the preprint warehouse, which prohibited smoking in any area except break areas and offices. The discipline for violation of this rule was immediate dismissal.

10. This rule was frequently communicated to and readily known by the work force, as testified to by witnesses for both plaintiff and defendant.

11. On June 9, 1983, Jenelle Carroll, plaintiff's supervisor, inadvertently noticed what appeared to be a violation by plaintiff of this rule, in the shipping area restroom of the preprint warehouse. She entered the restroom and proceeded into the stall next to the stall occupied by the plaintiff. Carroll smelled cigarette aroma and observed smoke in the air above the stall occupied by Crockett. Crockett identified Jenelle Carroll and spoke to her.

12. Carroll did not confront Crockett but consulted her supervisor, Paul Wise, on the proper procedure should she observe someone smoking in an unauthorized area. Crockett's name was not mentioned. Wise instructed Carroll to bring to his office any employee caught smoking in the future.

13. On June 10, 1983, Carroll entered the same restroom as before, just before the conclusion of the shift. The restroom was empty. She used the stall nearest the wall. While she was in the stall the plaintiff entered the restroom and took the stall next to Carroll. When Carroll finished, she washed her hands and left the restroom. As she got outside the restroom, she heard the stall door shut, the exhaust fan go on, and the stall door shut again. Carroll became suspicious and returned to the restroom. As she stood out of sight of plaintiff, she watched a billow of smoke rise above the stall occupied by plaintiff and smelled smoke. Carroll waited for plaintiff to finish and confronted her about smoking in violation of company policy.

14. Carroll escorted plaintiff to Wise's office where Carroll informed Wise of what she observed. Wise asked plaintiff about the matter, and Crockett denied smoking. Wise informed her of the serious nature of the offense. He told her that he would inform her of the consequences of the allegation the following Monday after his review of the matter with personnel and his immediate supervisor, Paul Pittman.

15. On Monday morning, June 13, 1983, Wise, Pittman, and Robert Holcomb, the facility personnel manager, met to review

the events of the previous Friday. Carroll participated in the meeting to advise Pittman and Holcomb of what she observed. Wise also discussed what transpired during his meeting with plaintiff on Friday, June 10, and her denial of smoking. Agreement was reached that termination was appropriate. Pittman went to his superior and asked and received his approval to terminate Crockett.

16. That afternoon plaintiff met with Carroll, Wise and Pittman. Wise told plaintiff that she was terminated as of that date for violating a known company work rule, *i.e.*, smoking in the preprint warehouse women's restroom.

17. Since June 13, 1983, plaintiff has performed no services as an employee of Eckerd and has received no remuneration since her termination on that date.

18. Plaintiff's witness Debbie Pope testified that she admitted to company management that she smoked in the preprint warehouse restroom before she learned that it was a work rule violation. This admission is not comparable to the present situation and does not show a difference of treatment between plaintiff and Pope. Plaintiff admits that she was fully aware of the rule against smoking at all relevant times.

19. Testimony by witnesses for both plaintiff and defendant reveals that at the time the plaintiff was terminated for smoking, except for the incident with Pope, no other employees had ever been caught smoking nor did any employee approach management and admit that they had observed a particular individual smoking.

20. In addition to the incident on June 10, 1983, for which Fannie Crockett was terminated, evidence was received that she had been observed smoking in the shipping area restroom on at least one other occasion besides June 9 and 10, 1983, but that the employee who witnessed this, Delores Slayton, did not come forth with this information until after plaintiff's termination.

21. Plaintiff contends that she complained frequently about the disparity of work assignments.

22. Plaintiff's work appraisal forms describe her as a good and cooperative employee. No indication is found that she was a complainer or problem employee or that defendant took any action against her because of her alleged complaining.

23. Plaintiff's performance was considered satisfactory and had no bearing on her discharge.

24. Plaintiff was the first distribution center employee caught smoking and terminated without progressive counseling. Thirteen (13) other employees have been terminated at the distribution center for first time offenses during a two-year period prior to the plaintiff's termination; ten (10) were white and three (3) were black.

25. Plaintiff was replaced in her position by a black female.

26. The percentage of black employees working at the Eckerd distribution center in Charlotte has increased slightly since 1981.

27. Plaintiff has submitted evidence that she contends shows racial animus in Jenelle Carroll's assignment of work details to white and black employees. Although the evidence seems to show that plaintiff was often given more demanding work assignments than those given to Beulah Holbrooks, a similarly situated white employee, the court does not find this evidence persuasive in showing any racial animus. Other alleged instances of discriminatory conduct likewise fail to show any racial animus towards plaintiff. The court does not reach the question whether plaintiff was actually smoking in the restroom on June 10, 1983. However, the court finds that employees of Eckerd fired plaintiff because they believed that plaintiff had committed this violation of the rules.

29. The parties have stipulated that the matter for the court's consideration is one of wrongful discharge by reason of alleged racial discrimination. Wrongful discrimina-

tion in job assignments has not been charged.

Based on the foregoing findings of fact, the court concludes as follows:

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter. 42 U.S.C. § 2000e–5(f), and 28 U.S.C. § 1343(4). The court has jurisdiction of the person of the defendant.

2. The defendant is an employer engaged in an industry affecting commerce, and had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar years, within the meaning of 42 U.S.C. § 2000e(b).

3. Defendant is a corporation transacting business at several locations in Mecklenburg County, and is a person within the meaning of 42 U.S.C. § 1981.

4. Plaintiff Crockett has complied with the procedural requirements of 42 U.S.C. §§ 2000e–5(e) and (f).

5. The basic tenets and evidentiary standards enumerated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny were set out to guide courts in assessing allegations like those in the present action. In a disparate treatment discrimination suit, the plaintiff must demonstrate "intentional discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In satisfying her burden of proving intentional discrimination, plaintiff can not rely merely on the fact that an employer based its decision on incorrect or mistaken information or that it was an unfair decision. *See, e.g., Jones v. Los Angeles Community College Dist.,* 702 F.2d 203, 205 (9th Cir.1983).

The issue in this case is whether or not plaintiff was discharged because of her race, *not* whether or not the company was *correct* in its assertions that she had smoked in the restroom. It is not sufficient for plaintiff to show that defendant

was mistaken in its conclusion that she was smoking in the restroom. Defendant may not be held liable for a mistaken or wrong reason as long as the decision was not based on unlawful discrimination. Defendant need not show that its conclusion was correct. If the trier of fact finds that defendant fired plaintiff because of a good faith belief that she violated the rule against smoking, plaintiff may prevail only by demonstrating that this reason is a mere pretext for discrimination. *See Burdine, supra,* 450 U.S. at 259, 101 S.Ct. at 1096; *Sanchez v. Texas Commission on Alcoholism,* 660 F.2d 658, 662 (5th Cir.1981); *Jones, supra; Bostic v. Wall,* 588 F.Supp. 994, 1002 (W.D.N.C.1984).

6. The court has made no finding as to whether or not plaintiff was actually smoking in the restroom, as charged by defendant. Even assuming this to be true, plaintiff has not shown that defendant's proffered reason for firing her was a pretext for discrimination. The court has found that defendants believed in good faith that plaintiff was violating the rule against smoking and fired her because of this.

7. Plaintiff has not shown that similarly situated non-minority employees were punished less severely. Several non-minority employees have been fired by defendant after a first offense. The example of Debbie Pope's not being fired for smoking is not applicable because the company was told that she was not aware of the rule at the time of violating it.

8. Even *assuming* that plaintiff has made a *prima facie* case, she has not rebutted the reason given by defendant for terminating her. She has not shown that defendant terminated her for reasons other than its belief that she had violated company rules or that the termination was in any way a retaliation for her alleged complaining of disparate racial treatment in work assignments. Plaintiff has failed to show either that she made such complaints in a way that defendant was cognizant of her as a "complainer" or that the determination

to fire her was in any way affected by her alleged complaints.

The court finds that plaintiff has failed to carry her burden of proving racial discrimination and finds no persuasive evidence of disparate treatment in plaintiff's discharge.

Her discharge was "hard nosed" but not racially discriminatory.

Accordingly, defendant is entitled to a dismissal with prejudice of all claims and causes of action stated by plaintiff against the defendant.