The FAIR EMPLOYMENT COUNCIL OF GREATER WASHINGTON, INC., William Demps, Jr., and Ernest A. Tuckett, III, Plaintiffs,

v.

BMC MARKETING CORP. and Snelling and Snelling, Inc., Defendants.

Civ. A. No. 91–0989 (NHJ).

United States District Court, District of Columbia.

June 18, 1993.

**403**

Joseph M. Sellers & Roderic V.O. Boggs, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Patricia H. Anderson, Andrew T. Karron, Causton A. Toney, Mark A. Kass, M. Sean Laane & Melissa A. Scanlon, Arnold & Porter, Washington, DC, for plaintiffs.

John Gibson Mullan & John S. Irving, Kirkland & Ellis, Joseph A. Shea & Michael P. MacDonald, Center for Individual Rights, Washington, DC, for defendant BMC Marketing Corp.

Charles A. Shanor, Barbara Berish Brown, Joseph E. Schmitz and Lisa Bryant Fowler, Paul, Hastings, Janofsky & Walker, Washington, DC, for defendant Snelling and Snelling, Inc.

## MEMORANDUM AND ORDER

NORMA HOLLOWAY JOHNSON, District Judge.

The plaintiffs in this case are the Fair Employment Council ("FEC") and two black "testers" whom it sent to defendant BMC's employment agency in search of job referrals. The black testers did not receive referrals, while two white testers with allegedly comparable qualifications did receive referrals. The complaint alleges violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(b) (West 1981), the Civil Rights Act of 1866, *id.* § 1981, and the District of Columbia Human Rights Act, D.C.Code Ann. § 1–2512(b) (1992). Defendant Snelling and Snelling has a franchise agreement with BMC, and the plaintiffs allege that this exposes Snelling to liability for BMC's discrimination. Both defendants have filed dispositive motions.

## DISCUSSION

### 1. Testers Have Standing to Sue Under 42 U.S.C. § 2000e–2(b)

The individual plaintiffs admit that they were not actually seeking employment and would not have accepted any jobs to which the defendants referred them. *See* Dep. of Ernest A. Tuckett III at 78 (attached to Snelling's Mot. to Dismiss as Ex. 15); Dep. of William Demps, Jr. at 234 (attached to Snelling's Mot. to Dismiss as Ex. 16). The defendants have seized upon these admissions as proof that the plaintiffs suffered no actual injury and, therefore, lack standing to bring this action.

█ The standing doctrine imposes two basic limitations upon a plaintiff's ability to bring suit in federal court: the first derives directly from the "case or controversy" requirement of Article III of the Constitution, and the second is composed of prudential barriers erected by the judiciary. The Supreme Court has distilled the "case or controversy" test of standing into three elements. A litigant seeking to invoke a federal court's authority must show (1) " 'some actual or threatened injury,' " *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)), that (2) " 'fairly can be traced to the challenged action' " and (3) " 'is likely to be redressed by a favorable decision,' " *id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976)). The prudential limitations established by the Supreme Court require (1) that the plaintiff not assert a generalized grievance, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), (2) that the plaintiff's interest be within the "zone of interests" protected by the statute under which his claim arises, *Gray v. Greyhound Lines, East,* 545 F.2d 169, 175 (D.C.Cir.1976), and (3) that plaintiffs assert their own claims, not those of third parties, *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

■ The Supreme Court has long recognized that "testers" such as the individual plaintiffs can suffer injury within the meaning of Article III. In *Evers v. Dwyer*, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), the Court permitted a class of plaintiffs to challenge segregated seating on buses, holding that whether they "may have boarded this particular bus for the purpose of instituting this litigation is not significant." *Id.* at 204, 79 S.Ct. at 180. Similarly, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Court held that testers had standing to seek relief for violations of the Fair Housing Act, 42 U.S.C. § 3604(d), which made it unlawful

> [t]o represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

*Havens*, 455 U.S. at 373, 102 S.Ct. at 1121 (quoting 42 U.S.C. § 3604(d)). The Court observed that with this language "Congress ... conferred on all 'persons' a legal right to truthful information about available housing," and so "[a] tester who has been the object of a misrepresentation made unlawful under [§ 3604(d) ] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* at 373–74, 102 S.Ct. at 1121.

The language of the statute at issue in this case is remarkably similar:

> It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, *any individual* because of his race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e–2(b) (West 1981) (emphasis added). Just as the statute in *Havens*, by its terms, "establishe[d] an enforceable right to truthful information concerning the availability of housing," 455 U.S. at 373, 102 S.Ct. at 1121, so § 2000e–2(b) by its terms establishes an enforceable right to nondiscriminatory referrals from employment agencies. The Supreme Court has recognized that "the actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.' " *Id.* (quoting *Warth*, 422 U.S. at 500, 95 S.Ct. at 2206). By alleging the violation of this right, therefore, the plaintiffs have alleged "a distinct and palpable injury" sufficient to confer standing. *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206.[1]

The authorities upon which the defendants principally rely are therefore distinguishable. BMC bases much of its argument on *Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir.1972), in which a plaintiff sued an airline that had placed newspaper advertisements seeking female flight attendants but not male flight attendants in alleged violation of 42 U.S.C. § 2000e–3(b). The Fifth Circuit permitted the plaintiff to prosecute his suit but observed, in dicta, that "[t]o be aggrieved under this subsection a person must be able to demonstrate that he has a real, present interest in the type of employment advertised." *Id.* This statement was prompted, however, by the court's "refus[al] to rule that a mere casual reader of an advertisement that violates this section may bring suit." *Id.* The court apparently recognized that unlike other provisions of Title VII, § 2000e–3(b) did not contain explicit language describing what sort of person would be "aggrieved" by violation of the section and would have a right to sue under § 2000e–5(e). Clearly Congress had not intended that every reader of a discriminatory newspaper advertisement would have standing to sue the advertiser. Yet § 2000e–3(b) does not explicitly create rights but merely declares that it is an unlawful employment practice to publish advertisements containing discriminatory preferences. Unlike § 2000e–2(b) and § 3604(d), it does not vest the right to sue in "any individual" or "any person" who is a victim of the unlawful employment practice. The court in

---

1. Having concluded that the plain language of § 2000e–2(b) confers standing upon the plaintiffs, the Court rejects Snelling's arguments relating to the role of the EEOC, *see* Snelling's Mem. in Support of Mot. to Dismiss at 33–35, which argue that the existence of the EEOC proves Congress did not intend to permit tester standing in Title VII actions. Congressional intent is irrelevant when a statute is clear on its face.

*Hailes* thus acted reasonably in construing § 2000e–3(b) to limit the class of "persons aggrieved" to those with an interest in employment. This reasoning therefore does not apply to § 2000e–2(b), which clearly indicates that the "individual" who fails to receive a referral is the "person aggrieved."

■ Snelling, on the other hand, relies primarily upon a district court decision, *Parr v. Woodmen of the World Life Insurance Society,* 657 F.Supp. 1022 (M.D.Ga.1987), in which the plaintiff was not seeking a job but was instead attempting to manufacture a lawsuit. The court found that the plaintiff's purpose in interviewing for a job was not to obtain employment, but "to let it be known that he [was] married to a black woman ... and then to claim as the basis of a Title VII charge and civil action that he was told applying would be useless." *Id.* at 1032. The court then held that "[a] plaintiff whose primary purpose in interviewing for a job is to create the basis for a Title VII EEOC charge and lawsuit, is not the bona fide applicant for a job that he must be to establish a prima facie case" and therefore could not be damaged by failure to hire. *Id.* *Parr* differs from this case, however, because it involved an action for failure to hire under 42 U.S.C. § 2000e–2(a)(1), not an action for failure to provide an employment referral under § 2000e–2(b). The relevant inquiry is not, as Snelling argues, whether the plaintiffs made "a *bona fide* expression of interest" in employment, Snelling's Mem. in Support of Mot. to Dismiss at 32, but instead whether they sought to obtain the thing to which they had an enforceable right under Title VII. Section 2000e–2(a)(1) protects the right to non-discriminatory hiring, but because the plaintiff in *Parr* did not actually seek a job, he could not have been injured by the defendant's failure to hire him. Section 2000e–2(b), however, protects the right to nondiscriminatory referrals, and because the plaintiffs in this case did seek referrals, they can claim injury resulting from the defendants' failure to provide those referrals.

BMC also argues that even if the plaintiffs have suffered injury, they lack standing because they have not shown that they are "likely to suffer future injury," *City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983), and therefore have no right to injunctive relief. The plaintiff in *Lyons* alleged that when stopped for a minor traffic offense he was nearly strangled by the local police, who without provocation applied a dangerous "chokehold." *Id.* at 97, 103 S.Ct. at 1663. The plaintiff sought to enjoin future use of the chokehold, which allegedly had resulted in fifteen deaths in Los Angeles. *Id.* at 100, 103 S.Ct. at 1664. The Supreme Court declared that he did not have standing to seek injunctive relief, because "it is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse. And it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.* at 108, 103 S.Ct. at 1668.

The difference between *Lyons* and this case, however, is that in *Lyons* the actions of the police officers were entirely outside the plaintiff's control. He could only become a chokehold victim if the police stopped him again, and only the police could decide whether to stop him. In this case, however, the plaintiffs are free to return to BMC at any time in search of nondiscriminatory employment referrals. Unlike the plaintiff in *Lyons,* therefore, they alone control the decision to initiate contact. *See* Tr. of Mots. Hr'g at 37–38. They, therefore, have no problem establishing a probability of future injury.

**2. The FEC Meets the Requirements for Organizational Standing**

■ To have standing on its own behalf, an organization must meet the same standing test that applies to individuals. The organization must show actual or threatened injury that is fairly traceable to the alleged illegal action and is likely to be redressed by a favorable court decision. *See Valley Forge,*

454 U.S. at 472, 102 S.Ct. at 758. Accordingly, just as an individual lacks standing to assert " 'generalized grievances' about the conduct of Government," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974), so an "organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III," *Simon*, 426 U.S. at 40, 96 S.Ct. at 1925. If, however, an organization points to a "concrete and demonstrable injury to [its] activities," not "simply a setback to the organization's abstract social interests," the organization will have established a right to bring suit. *Havens*, 455 U.S. at 379, 102 S.Ct. at 1124. *Havens* makes clear, furthermore, that an organization establishes Article III injury if it alleges that purportedly illegal action forces the group to divert resources from other programs. *See id.*

To establish that FEC has standing, the plaintiffs allege in their complaint that

> defendants' discriminatory actions have: (i) interfered with the efforts and programs of plaintiff Fair Employment Council intended to bring about equality of opportunity to minorities and others in employment in the Washington, D.C. metropolitan area; [and] (ii) forced the Fair Employment Council to devote scarce resources to identifying and counteracting defendant's unlawful employment practices.

Second Am. Compl. at 28. In their opposition memorandum the plaintiffs further describe the "efforts and programs" which they allege have suffered as a result of the defendants' actions:

> In addition to its scientific testing program, the FEC engages in a variety of education, counseling, and research projects designed to foster equal employment opportunity in the Washington metro area. For example, the FEC has worked with local public school officials to develop programs to assist students in seeking and obtaining employment; it has conducted workshops with the Greater Washington Board of Trade on managing a racially diverse workforce; and it has engaged in extensive research concerning employment opportunity in the Washington metro area, including a research study conducted for the U.S. Civil Rights Commission and the D.C. Latino Civil Rights Task Force on discrimination against Latino job applicants in the Washington, D.C. area.

Pls.' Opp'n to Mots. to Dismiss at 24–25 (citation omitted). The plaintiffs have also submitted an affidavit executed by FEC's director of operations, who states that "the need to devote resources to detecting and counteracting defendants' discriminatory practices" has interfered with several of FEC's ongoing programs, including the publication of research reports, the expansion of a job search training program, and the creation of an employment opportunity information bank. *See* Decl. of Charles W. Jackson at 6 (attached to Pls.' App. of Exs. as Ex. 5). The "drain on the organization's resources" alleged here thus appears no less palpable or specific than the injuries asserted by the organizational plaintiff in *Havens*. *See* 455 U.S. at 379, 102 S.Ct. at 1124 (finding sufficient the following statement: "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [*sic*] racially discriminatory steering practices.").

■ The defendants' only substantial response to these allegations is to claim that FEC's injury cannot be traced to the defendants' actions. BMC argues that "FEC designed and implemented its systematic testing program without reference to any action by defendants here.... As FEC's devotion of resources occurred *before* any alleged discrimination by BMC, linking the two is logically and legally impossible." BMC's Reply to Pls.' Opp'n to Mots. to Dismiss at 14–15. The Court must reject this argument, as *Havens* provides that a group suffers cognizable injury when it expends resources in order to "identify" discrimination. *See* 455 U.S. at 379, 102 S.Ct. at 1124. Whether FEC initially suspected BMC of discrimination is therefore irrelevant. Even if this

were not so, however, the Court would still reject BMC's argument because it ignores the second pair of testers that FEC sent to investigate BMC. The first pair of testers visited BMC on December 10, 1990, and the second pair visited on December 11. Even if FEC did not suspect the defendants of discrimination when it dispatched the first pair of testers, the results of that first test gave it ample cause to investigate further. The defendants' treatment of the first testers thus could have been a factor in FEC's decision to send the second pair of testers. Indeed, one tester's deposition shows that FEC did not assign the second pair to test BMC until after the first test had already been completed. *See* Dep. of Ernest A. Tuckett III at 84 (attached to Snelling's Mot. to Dismiss as Ex. 12). Because the second pair of testers, like the first, received compensation for their work, *see* Second Am. Compl. at 14, the second test caused FEC to consume resources that might have been used to support its other activities, thereby causing it a constitutionally cognizable injury. BMC's argument that FEC's injury has no "plausible link to BMC's actions" is therefore meritless.

### 3. The Plaintiffs Cannot Seek Damages Under 42 U.S.C. § 1981a(a)(1)

■ The plaintiffs contend that they have a right to compensatory and punitive damages in their Title VII action. Although the events that led to this suit occurred in 1990, the plaintiffs claim that the new remedial provisions of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a(a)(1) (West Supp.1992), apply retroactively. Since the decision of the Court of Appeals in *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886 (D.C.Cir. 1992), which established a framework for determining whether provisions of the new Act apply retroactively, the judges of this district have reached contradictory conclusions in ruling on the retroactivity of § 1981a(a)(1). *Compare Lockley v. Chao*, 812 F.Supp. 246 (D.D.C.1993) (Revercomb, J.) (holding that the section applies retroactively) *with Thomas v. Lane Bryant, Inc.*, No. 91–3154, 1993 WL 25534 (D.D.C. Jan. 28, 1993) (Richey, J.) (holding that the section does not apply retroactively). Of these analyses, the Court chooses to follow *Thomas*, which it finds

more persuasive, and, therefore, holds that the plaintiffs cannot seek damages under § 1981a(a)(1).

### 4. The Plaintiffs Have Standing to Sue Under 42 U.S.C. § 1981

Snelling argues that the plaintiffs lack standing to sue under 42 U.S.C. § 1981. However, the Court's order of December 20, 1991, which denied BMC's motion to dismiss on this ground, effectively ruled that the plaintiffs had standing under § 1981. Snelling contends that the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), changes this analysis, but the Court disagrees. The Court therefore rejects Snelling's arguments.

### 5. Remaining Arguments

■ Snelling argues that it cannot be held vicariously liable for BMC's allegedly discriminatory acts because BMC is only Snelling's franchisee, not its agent. The Court must deny Snelling's motion for summary judgment on this ground, as genuine issues of material fact prevent the Court from concluding that Snelling is entitled to judgment as a matter of law.

Snelling also argues that the plaintiffs' Title VII claims against it should be dismissed because the plaintiffs failed to name Snelling in their Title VII charges before the EEOC. The Court recognizes that generally Title VII claimants may sue only respondents named in the original EEOC charge. *See* 42 U.S.C.A. § 2000e–5(f)(1) (West 1981) (permitting a claimant who has exhausted administrative remedies to bring a civil action "against the respondent named in the charge"). However, "[t]here may be circumstances in which an EEOC charge and right to sue notice against one party may provide notice to another related party sufficient to satisfy the plaintiff's duty to comply with the legislatively mandated administrative prerequisites to suit." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1434 (D.C.Cir.1988). One such exception to the general rule " 'is if the relationship between the named party and the unnamed

**408**

defendant is that of principal and agent.' " 2 Arthur Larson & Lex K. Larson, *Employment Discrimination* § 49.11(c)(2) (1992) (quoting *Bostic v. Wall,* 588 F.Supp. 994, 997 (W.D.N.C.1984), *aff'd mem.,* 762 F.2d 997 (4th Cir.1985)). The plaintiffs have alleged the existence of an agency relationship, and as the Court has explained, genuine issues of material fact prevent the Court from ruling that such a relationship did not exist. The Court must therefore reject this ground for dismissal as well.

Finally, Snelling argues that the one-year statute of limitations on the plaintiffs' claims under the D.C. Human Rights Act has expired. The plaintiffs filed a motion to amend their complaint to add these claims on August 29, 1991, but the Court did not grant the motion until December 20, 1991; ten days after expiration of the limitations period. Local Rule 108(i) provides that an "amended pleading shall be deemed to have been filed and served by mail on the date on which the order granting the motion is entered." The Court will not decide this issue yet, but will instead request the parties to provide additional arguments on this question at the status hearing scheduled for June 18, 1993.

For these reasons, therefore, it is this 18th day of June, 1993,

ORDERED that the plaintiffs' claim for compensatory and punitive damages pursuant to 42 U.S.C.A. § 1981a(a)(1) (West Supp. 1992) be, and hereby is, dismissed; and it is further

ORDERED that all remaining portions of the motion of defendant BMC Marketing Corporation to dismiss the second amended complaint be, and hereby are, denied; and it is further ·

ORDERED that all remaining portions of the motion of defendant Snelling and Snelling, Inc. to dismiss and/or for summary judgment, with the exception of Snelling and Snelling's argument that the plaintiffs' claims under the D.C. Human Rights Act are time-barred, be, and hereby are, denied.